IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LANA CORDNER, and SELBY
CORDNER,

                Plaintiffs,

      v.

SPECIALIZED LOAN SERVICING,
LLC, AMERICA'S WHOLESALE
LENDER, BANK OF AMERICA,
N.A., MORTGAGE ELECTRONIC
REGISTRATION SYSTEM, INC.,
MCCALLA RAYMER, LLC,
INVITATION HOMES, IH5
PROPERTY GEORGIA, L.P., THE
BANK OF NEW YORK MELLON,
DONALD R. HICKS, SHERRY
NIKODEM, DAN ALLEN, and
FIRST AMERICAN TITLE
COMPANY,[1]

                Defendants.

CIVIL ACTION FILE NO.

1:15-CV-2090-TWT-JFK

## FINAL REPORT AND RECOMMENDATION

---

[1] For convenience, the Court has identified the entities Plaintiffs name as corporate defendants without specifying that with respect to each corporate party Plaintiffs name the corporate defendant and "all nominees[,] successors[,] and assigns, et al." [Doc. 1]. In addition, for certain of these entities (i.e., McCalla Raymer, MERS, and IH5 Property of Georgia, L.P.), Plaintiffs name the same entity (found at different locations) multiple times in the instant Complaint. [Id.]. However, each entity is only listed in the caption once. [Id.].

**THIS MATTER** is before the Court upon Motions [Docs. 7, 10, and 26] to Dismiss filed by Defendants on various grounds. Plaintiffs did not respond to any of Defendants' Motions. These matters, now ripe for disposition by the Court, are referred by the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) for Report and Recommendation.

## I.     Factual Background / Procedural History

This action arises out of the foreclosure of real property, the former residence of Plaintiffs Lana and Selby Cordner ("Cordners"), located at 464 Crested View Drive, Loganville, Georgia, 30052 ("Property"). [Doc. 1 ("Third Complaint")]. This is the third such civil action initiated by Plaintiffs in protest of foreclosure.[2]

On May 19, 2006, Plaintiffs obtained a loan from America's Wholesale Lender ("AWL") in the principal amount of One Hundred Fifty-Two Thousand Nine Hundred Ten and 00/100 ($152,910.00) ("Loan"). [Doc. 7-2 / Exhibit A ("Security Deed")]. In order to secure payment of the Loan, Plaintiffs executed a security deed ("Security Deed") conveying the Property to Mortgage Electronic Registration System, Inc. ("MERS") (as grantee under the security deed, and nominee for AWL), recorded on

---

[2] See Cordner, et al. v. Specialized Loan Servicing, LLC, et al. ("Cordner I"), Civil Case No. 1:14-CV-01296-TWT; and see Cordner, et al. v. Specialized Loan Servicing, LLC, et al. ("Cordner II"), Civil Case No. 1:15-CV-2298-TWT.

AO 72A
(Rev.8/82)

May 25, 2006, in Deed Book 46542, page 304, in the Gwinnett County, Georgia, real property records.  [Id.].

On September 20, 2011, MERS assigned all rights, title and interest in and to the Security Deed to The Bank of New York Mellon, f/k/a The Bank of New York ("BONYM"), as Trustee for the Certificate Holders of the CW ABS Inc., Asset-Backed Certificates, Series 2006-12.  [Doc. 7-3 / Exhibit B ("Assignment")].  The Assignment to BONYM was recorded on the same date at Deed Book 50879, Page 121, of the Gwinnett County, Georgia, real property records.  [Id.].

At some point after the Assignment to BONYM, Plaintiffs defaulted on the Loan.  On or around October 25, 2013, Plaintiffs received a package from Specialized Loan Servicing, LLC, advising Plaintiffs that the mortgage was in default, that the Property would be referred for foreclosure, and that the foreclosure would be conducted by BONYM.  [Third Complaint at 4, ¶ 12].

Following notice to the Cordners, and after at least one delay, a non-judicial foreclosure sale of the Property was held on June 2, 2015.[3]  [Doc. 26-1 at 2]. Defendant IH5 Property Georgia, L.P. ("IH5"), was the highest bidder at the foreclosure sale and purchased the Property for $120,800.00.  [Doc. 26-1 at 10 /

---

[3] There was at least one other foreclosure sale noticed (scheduled for June 3, 2014) that did not take place in light of related litigation initiated by Plaintiffs.

3

Exhibit 1].  Accordingly, BONYM, as Trustee, transferred the Property to IH5 upon purchase.  [Id.].

On July 27, 2015, a Deed of Power conveying the Property from Trustee BONYM (as attorney-in-fact for Plaintiffs) to IH5 was recorded at Deed Book 53744, page 0189, in the Superior Court of Gwinnett County, Georgia. [Doc. 26 / Exhibit 1 ("Deed of Power")].  Defendant McCalla Raymer, LLC ("McCalla"), as servicer of the loan, facilitated the foreclosure sale.  [Id.].  Defendant Specialized Loan Servicing, LLC ("SLS") acted as attorney-in-fact for BONYM. [Id. at 3].

## A.     First Complaint / Cordner I

On March 28, 2014, Plaintiffs Lana and Selby Cordner, acting *pro se*, commenced a civil suit via a filing entitled "Complaint for Permanent Injunction for Cease and Desist any and all Foreclosure Proceedings and Collection Activity, in any and every, Including Reporting any Payment Activities; and other Equitable Relief" ("First Complaint") against SLS, McCalla, AWL, BONYM, and MERS in the Superior Court of Gwinnett County, Georgia.  [See Cordner, et al. v. Specialized Loan Servicing, LLC, et al., State Action No. 14-A-0-2665-2 ("First Complaint")]. Plaintiffs alleged violations of federal law such as violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, et seq., violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., violations of the Truth

4

in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq., and violations of the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1641, et seq. [Id. at ¶¶ 87–89, 100].

On April 30, 2014, prior to service being accomplished as to the other named defendants, Defendant McCalla filed a Notice of Removal in this federal district court asserting subject matter jurisdiction based upon 28 U.S.C. §§ 1331, 1367, 1441, and 1446. See Cordner, et al. v. Specialized Loan Servicing, LLC, et al. ("Cordner I"), Civil Case No. 1:14-CV-01296-TWT [Doc. 1 at 2 n.1]. On May 7, 2014, McCalla moved to dismiss Plaintiffs' First Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. 3]. After Plaintiffs failed to respond, McCalla's motion was granted by the presiding judge, The Honorable Thomas W. Thrash, Jr., Chief U. S. District Court Judge, Northern District of Georgia.[4] [Doc. 4]. The Court stated in its ruling that "Plaintiffs' wrongful foreclosure theories have been rejected by the Courts of Georgia" and that "Plaintiffs fail to allege a plausible claim for relief against the attorneys." [Doc. 4 at 2]. On June 25, 2014, SLS and BONYM moved to dismiss all claims brought against them. [Doc. 6]. Again, Plaintiffs did not respond to the motion to dismiss. On August 6, 2014, the district

---

[4] In each instance, Plaintiffs' copy of the Court's Orders sent by U.S. Mail was returned to the Court as "Undeliverable." [Docs. 5, 9]. Plaintiffs were no longer at the address of record, and the time for forwarding Plaintiffs' mail had expired.

AO 72A
(Rev.8/82)

court granted the motion and dismissed both SLS and BONYM from the case, explaining that "Plaintiffs have no standing to contest the assignment of their mortgage and fail to state a plausible claim for relief." [Doc. 10]. The district court orders dismissing Plaintiffs' claims brought against McCalla, SLS, and BONYM did not expressly state whether dismissal was with or without prejudice.[5] [Docs. 4, 10].

On October 8, 2014, Cordner I was referred to this magistrate judge for determination of any pretrial matters. [Doc. 11]. The only remaining Defendants were AWL and MERS, and neither had been served. [Doc. 11 at 3]. The undersigned noted that Plaintiffs had not taken any steps to effect service or otherwise prosecute the claim. [Doc. 11 at 2−3]. On December 4, 2014, upon a Report and Recommendation from the undersigned, Chief Judge Thrash dismissed Plaintiffs' First Complaint *with prejudice* for want of prosecution, Fed. R. Civ. P. 41(b) and LR 41.3(A)(3), N.D.Ga.[6] [Doc. 14]. Final judgment was entered December 5, 2014. [Doc. 15].

---

[5] Because the district court's orders did not grant Plaintiffs leave to amend their First Complaint, dismissal is presumed to be *with prejudice*. See Fed. R. Civ. P. 41(b) ("Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule . . . operates as an adjudication on the merits."); and see Federated Dept. Stores, Inc. v. Moitie, 101 S. Ct. 2424, 2428 n.3 (1981) (citations omitted).

[6] Local Rule 41.3(B) provides that, "In accordance with the provisions of Fed. R. Civ. P. 41(b), a dismissal for want of prosecution operates as an adjudication upon the merits . . . ." LR 41.3(B), N.D. Ga.

6

**B.     Second Complaint / <u>Cordner II</u>**

On May 27, 2015, approximately a week before the June 2, 2015, foreclosure sale, Plaintiffs filed a second lawsuit identical to <u>Cordner I</u> against the exact same defendants in the Superior Court of Gwinnett County, Georgia. [<u>See Cordner v. Specialized Loan Servicing, LLC, et al.</u>,  Gwinnett Case No. 15A05823-2 ("Second Complaint")].  Plaintiffs commenced the second lawsuit via a Motion for Temporary Restraining Order and/or Preliminary Injunction requesting that the foreclosure sale of the Property be prohibited. [Doc. 2].  Defendants removed the case to this federal district court on June 26, 2015.  See <u>Cordner, et al. v. Specialized Loan Servicing, LLC, et al. ("Cordner II")</u>, Civil Case No. 1:15-CV-2298-TWT [Doc. 1 / Exhibit A]. Plaintiffs' motion for injunctive relief was unsuccessful. [Doc. 6].  On July 2, 2015, Defendants McCalla, MERS, SLS, and BONYM moved to dismiss Plaintiffs' Second Complaint under Fed. R. Civ. P. 12(b)(6). [Doc. 4].  Defendants argued that Plaintiffs' Second Complaint was "a verbatim copy of the complaint filed in <u>Cordner I</u>" and, therefore, precluded by *res judicata* and/or collateral estoppel (issue preclusion) doctrine. [Doc. 4 at 5–10].  Plaintiffs opposed Defendants' motion and also petitioned to "quiet title" in the Property.  [Docs. 8 and 9].

On September 15, 2015, Chief U.S. District Judge Thrash dismissed <u>Cordner II</u> based upon the doctrine of *res judicata*.  [Doc. 13].  Judge Thrash stated succinctly,

7

"[t]his action is virtually identical to the previous action filed by the Plaintiffs that was dismissed with prejudice by this Court." [Id. at 2].

### C.   Third Complaint / Cordner III

On June 11, 2015, while Cordner II was still pending in state court, Plaintiffs commenced the instant action by filing an "Affidavit Complaint for Deprivation of Rights under 42 U.S.C. [§§] 1983, 1985, 1986, et seq." [Doc. 1 ("Third Complaint")]. In the instant suit, Plaintiffs bring claims against many of the same Defendants, including SLS, McCalla, BONYM, MERS, and AWL, while adding new parties Bank of America, N.A. ("BANA"), Donald R. Hicks ("Hicks"), Dan Allen ("Allen"), IH5 Property of Georgia, L.P. ("IH5"), Invitation Homes ("IH"), Sherry Nikodem ("Nikodem"), and First American Title Insurance Company ("First American").[7] [Id.]. The enumerated causes of action within Plaintiffs' Complaint include: Vicarious Liability (Count I), Violation of the Fair Debt Collection Practices Act (Count II), Unjust Enrichment (Count III), "Set Aside Trustee's Sale" (Count IV), "Void or Cancel Trustee's Deed Upon Sale" (Count V), Mental Anguish (Count VI), Criminal Conspiracy of Theft (Count VII), Breach of Contract (Count VIII), Negligence (Count IX), Breach of Fiduciary Duty (Count X), Violations of Plaintiffs' Rights - 42 U.S.C.

---

[7] Plaintiffs mistakenly identify and name First American in their Third Complaint as "First American Title Company." [Doc. 10 at 1].

8

§ 1983 (Count XI), Denied Equal Protection under the Law - 42 U.S.C. § 1983 (Count XII), 18 U.S.C. §§ 1961–69 RICO (Count XIII), and 15 U.S.C. § 1601 TILA (Count XIV).[8]

Plaintiffs, claiming to be the "sole titleholders" of the Property, are residents of Gwinnett County, Georgia.   [Third Complaint at 3, ¶¶ 2, 3, 6].  Plaintiffs' Third Complaint alleges that during the relevant time period, all of the Defendants conducted business in Gwinnett County, Georgia, and within the State of Georgia.  According to Plaintiffs, there is diversity (of citizenship) amongst the parties and jurisdiction exists in this federal district court.  [Id., ¶¶ 4, 5].  Plaintiffs also assert federal question jurisdiction. [Id. at 3, Section II].

Three different groups of defendants currently seek relief from the Court. Defendants are aligned as follows:  Defendants SLS, McCalla, BONYM, MERS, and Hicks (collectively, the "Bank Defendants"), Defendants IH5, IH, Allen, and Nikodem (collectively, the "IH5 Defendants"), and First American.[9]  The Bank Defendants,

---

[8] The face of the Complaint also lists the following federal statutes, 28 U.S.C. §§ 1343(A)(3)(4) and 1331, 18 U.S.C. §§ 241, 242, 876, 1001, 1621, 3571, and 1961–69 (RICO), 15 U.S.C. § 1601 (TILA), 15 U.S.C. § 1692, et seq., and the Civil Rights Act of 1870.  [Third Complaint at 1].

[9] The Bank Defendants work in the mortgage industry.  The remaining entities and individuals comprising the IH5 Defendant Group are affiliated with IH5 Property – not the mortgage industry – and became involved following the non-judicial foreclosure sale and purchase by IH5.

excluding Hicks, have been named in all three cases.  Defendants BANA and AWL have not filed any responsive pleading.[10]

On September 11, 2015, the Bank Defendants moved [Doc. 7] to dismiss Plaintiffs' Third Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.[11]  [Doc. 7-1].  Also on September 11, 2015, First American filed an independent motion [Doc. 10] to dismiss.  On September 15, 2015, upon motion of the Bank Defendants, the Court entered an order staying all pretrial deadlines pending the District Court's decision on the motions [Docs. 7, 10] to dismiss. [Doc. 11].

On October 5, 2015, counsel for the IH5 Defendants made a special appearance and moved [Doc. 26] for dismissal of Plaintiffs' Third Complaint for failure to provide a short, plain statement of the claims asserted as required by Fed. R. Civ. P. 8 and for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(5) and (b)(6).[12]  The IH5 Defendants contemporaneously sought a stay [Doc. 27]

---

[10] There is no Proof of Service in the record.

[11] As discussed, *infra*, the Bank Defendants preserved all Rule 12(h) defenses, including insufficiency of process, insufficiency of service of process, and lack of personal jurisdiction arising from the same. [Doc. 7-1 at 6].

[12] The only specific facts in Plaintiffs' Third Complaint as to these IH5 Defendants pertains to Defendants' notification of Plaintiffs, or lack thereof, of the *purchase* of the Property.  [Third Complaint at 5–6, 16–17].  First, Plaintiffs are not

of pretrial deadlines pending disposition of the motion to dismiss by the District Court. On October 7, 2015, a second stay order issued with respect to these defendants. [Doc. 28].

Plaintiffs have not filed any response to Defendants' motions.

In evaluating Defendants' respective motions, the undersigned accepts the factual allegations within Plaintiffs' Third Complaint as true and construes the allegations in the light most favorable to Plaintiffs. See Hardy v. Regions Mortg., Inc., 449 F.3d 1357, 1359 (11th Cir. 2006); M.T.V. v. DeKalb County School Dist., 446 F.3d 1153, 1156 (11th Cir. 2006). "However, conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002) (citations omitted).

---

entitled to notice of purchase. The Georgia statutory scheme provides that the debtor must be given notice of the foreclosure sale – that the property is going to be foreclosed upon and sold. See Carr v. U.S. Bank, N.A., 534 Fed. Appx. 878, 880‒82 (11th Cir. 2013) (citations omitted) (discussing state law permitting non judicial power of sale foreclosure and notice requirements); see also You v. JP Morgan Chase Bank, 293 Ga. 67, 70, 743 S.E.2d 428, 430‒31 (2013) (citations omitted).   In the Third Complaint, within allegations in support of the Criminal Conspiracy of Theft claim, Plaintiffs concede that they "discovered intent to foreclose on [the Property] and sell it on the courthouse steps by US mail letter from McCalla Raymer, LLC received on 5/02/2015." [Third Complaint at 16, ¶ 60].  Plaintiffs go on to assert that notice should have come from the court. [Id.].

The Court has also taken into consideration the loan documents referenced in Plaintiffs' Third Complaint, <u>see</u> <u>Brooks v. Blue Cross and Blue Shield of Florida, Inc.</u>, 116 F.3d 1364, 1369 (11th Cir. 1997) (citation omitted), and has taken judicial notice, <u>see</u> Fed. R. Evid. 201, of the Court's own records, including those attached to Defendants' respective motions, <u>United States v. Rey</u>, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987).

Defendants' motions are ripe for disposition by the Court and referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). As explained herein, Plaintiffs' Third Complaint is subject to dismissal on multiple grounds.

## II.    DISCUSSION

With the exception of BANA and AWL, Defendants have all responded to Plaintiffs' Third Complaint, in part, by moving to dismiss under Rule 12(b)(6) of the Federal Rules of Procedure.[13]  All Defendants except First American, who has waived

---

[13] Defendants have not waived a service of process defense by way of their Rule 12(b)(6) motion and legal argument.  <u>See</u> <u>Wilson v. Prudential Fin.</u>, 332 F. Supp. 2d 83, 90 (D. D.C. August 13, 2004) (acknowledging that the federal rules permit a party to assert multiple Rule 12 defenses at the same time) (citations omitted); <u>see also</u> <u>Madara v. Hall</u>, 916 F.2d 1510, 1514 n.1 (11th Cir. 1990) (jurisdictional challenges may be joined with other defenses without waiving jurisdictional defenses).

AO 72A
(Rev.8/82)

its ability to challenge sufficiency of service of process, expressly preserve their ability

to later raise defenses related to the sufficiency of service of process.[14]

### A.   Plaintiffs Have Not Served Defendants In Accordance With The Federal Rules of Civil Procedure

Plaintiffs' claims against all of the Defendants except First American are subject

to dismissal for lack of service.  While the Bank Defendants expressly preserve their

defenses of insufficiency of process, service of process, and lack of personal

jurisdiction arising from the same, and despite lack of proof in the record of service,

their brief implies that certain of the Bank Defendants - SLS, BONYM, and MERS -

have been properly served.  [Doc. 7-1 at 6 ("As of the date of this filing, neither

McCalla nor Hicks received legal service of the Summons and Complaint.")].

Defendants IH5, through counsel, make a special appearance for purposes of

prosecuting their Rule 8 and Rule 12 motions and likewise preserve their ability to

later rely on the defenses of lack of personal jurisdiction, insufficient process, or

insufficient service of process.  [Doc. 26, at 1].

Although insufficiency of service of process is not advanced by any Defendant

as the primary legal position, the Court first considers any matter bearing upon

---

[14] Counsel for First American filed a general notice of appearance (without qualification) on August 31, 2015.  [Doc. 6].  First American does not challenge service of process in its memorandum of law in support of its motion to dismiss but rather seeks dismissal with prejudice based upon Rule 12(b)(6).  [Doc. 10].

13

jurisdiction.  Without proper service, the Court lacks personal jurisdiction over a Defendant and renders Plaintiffs' Third Complaint subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(5).  See Pardazi v. Cullman Med. Ctr., 896 F.2d 1313, 1317 (11th Cir. 1990) ("Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when the defendant has not been served."); see also  Moore v. McCalla Raymer, LLC, 916 F.Supp.2d 1332, 1339–40 (N.D. Ga. 2013) (adopting report and recommendation; dismissing MERS from action pursuant to Fed. R. Civ. P. 12(b)(5) and denying MERS' Rule 12(b)(6) motion due to lack of personal jurisdiction given insufficiency of service of process) (citations omitted).

Rule 4(c) of the Federal Rules of Civil Procedure provides, in part: "A summons must be served with a copy of the complaint.  The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service." Fed. R. Civ. P. 4(c)(1).

"Unless the defendant has waived service, the plaintiff must personally effect service upon the defendant, and service by mail is insufficient under 4(h)(1)(B)." Pelmore v. Pinestate Mortg. Corp., 2010 WL 520767, at *2 (N.D. Ga. February 8, 2010) (citing Fed. R. Civ. P. 4(h)(1)(B)); and see Dyer v. Wal-Mart Stores, Inc., 318 Fed. Appx. 843, 844 (11th Cir. 2009).  In addition, Rule 4(c) provides that service may be effected by "[a]ny person who is at least 18 years old and *not a party*. . . ."  Fed. R.

14

Civ. P. 4(c)(2) (emphasis added).  Moreover, service on a corporation must be made to the attention of an officer, managing or general agent, or other agent authorized by law to receive service of process, Fed. R. Civ. P. 4(l), while service on an individual must be done via personal service, Fed. R. Civ. P. 4(e).  Absent waiver, "proof of service must be made to the court."  Fed. R. Civ. P. 4(l)(1).  "Except for service by a United States marshal or deputy marshal, proof must be by the server's affidavit."  Id.

On September 18, 2015, after being put on notice by the Court regarding the insufficient service of process,  Plaintiffs attempted to effect service via certified mail.[15]  Plaintiffs submitted Proof of Service forms that are only partially complete and indicate that service was by certified mail. [Docs. 13–23, 29].  Plaintiffs' filings represent that certified mail was issued by a notary in each instance. [Id.].  There is no process server identified and no return or receipt noted – merely a document showing issuance of service.  [Id.].  Notarization of the Proof of Service document does not render the Proof of Service acceptable or sufficient proof, Fed. R. Civ. P. 4(l)(1), nor

_____

[15] On September 15, 2015, in an Order denying Plaintiffs' motion [Doc. 3] to quiet title and "motions" [Docs. 4 and 5] (responses) in opposition to Defendants' motions to dismiss, the undersigned observed that "a review of the docket does not reflect the service of process on any named Defendant." [Doc. 12].  Because the time for service had not expired, the Court did not take any affirmative step such as instructing Plaintiffs regarding how to accomplish service.   Likewise, the Court did not order that Plaintiffs effect service within a specified period of time or face dismissal pursuant to Fed. R. Civ. P. 4.

15

does notarization of a mailing evidence actual receipt of service. This is not effective service.

Moreover, time has expired for Plaintiffs to effect service.  Rule 4(m), the version applicable in this case, states:

> If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. . . .

Fed. R. Civ. P. 4(m).[16]  The Rule further provides that, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. . . ." Id.

Plaintiffs' Third Complaint was filed June 11, 2015. [Doc. 1].  Consequently, Plaintiffs were required to serve the summons and complaint on Defendants by October 12, 2015.  Plaintiffs made attempts to serve Defendants in mid-September 2015.  More than 120 days has passed since that time, and Plaintiffs have not proffered adequate proof of service as to any Defendant.[17]  The IH5 Defendants as well as Defendants McCalla and Hicks challenge the sufficiency of service of process and seek

---

[16] The 2015 version of Rule 4(m) applies here.  Effective December 1, 2015, Rule 4(m) was amended to shorten the time period for accomplishing service to ninety days.  See Fed. R. Civ. P. 4(m) (2016).

[17] As previously noted, First American waived a defense of insufficiency of service of process.

16

dismissal pursuant to Fed. R. Civ. P. 12(b)(5). The IH5 Defendants point to Plaintiffs' failure to serve an officer or registered agent of the corporate Defendants [Docs. 15, 19] and Plaintiffs' failure to personally serve the individual Defendants [Docs. 16 – 18]. The Court does not have personal jurisdiction over these Defendants. Plaintiffs' claims against the IH5 Defendants, McCalla, and Hicks are subject to dismissal for failure to effect service.[18]

Accordingly, the Court next considers whether Plaintiffs are able to cure deficient service. See Henderson v. United States, 116 S. Ct. 1638, 1641 n.5, 1643 (1996) (noting that the 1993 amendments to the Rules accorded courts "discretion to enlarge the 120-day period 'even if there is no good cause shown'") (quoting Fed. R. Civ. P. 4(m) advisory committee's note (1993)); Lau v. Klinger, 46 F. Supp. 2d 1377, 1380 (S.D. Ga. 1999) ("Rule 4(m) affords two safety hatches" for a plaintiff to "escape dismissal" for failure to properly serve a defendant: by "showing [ ] good cause, or by

_____

[18] Moreover, the fact that any of the above Defendants not properly served may have actual notice of the law suit does not relieve Plaintiff of the necessity of complying with Rule 4. See Albra v. Advan, Inc., 490 F.3d 826, 829 (11th Cir. 2007) ("A defendant's actual notice is not sufficient to cure defectively executed service.") (citations omitted); also see Whitehead v. CBS/Viacom, Inc., 221 F.R.D. 1, 3 (D. D.C. 2004) ("While the purpose of service is to give a defendant notice of claims against it, notice alone 'cannot cure an otherwise defective service.'") (citation omitted); Baade v. Price, 175 F.R.D. 403, 405 (D. D.C. 1997) ("The law is clear and mandates that there be strict compliance to Rule 4(h) and it is irrelevant whether or not defendant . . . had actual notice of the lawsuit.").

convincing the court to use its discretion to extend time even when good cause is absent."); see also Horenkamp v. Van Winkle And Co., Inc., 402 F.3d 1129, 1132 (11th Cir. 2005) (same).[19]  Plaintiffs have not attempted to show good cause for not properly serving the above Defendants.

Ordinarily, even in the absence of good cause, the Court would exercise its discretion and authorize *pro se* Plaintiffs an extension of time to accomplish service on Defendants.  However, the Cordner Plaintiffs are not strangers to this Court and its procedures as this is Plaintiffs' third lawsuit.  In addition, Plaintiffs have not sought any extension of time to accomplish service despite the issue being raised by Defendants' various motions.  See Etris v. Snyder, 2012 WL 692811, at *5 (N.D. Ga. March 1, 2012) (no additional time allowed to effect service despite statute of limitations bar upon dismissal of complaint where plaintiff was placed on notice of potential defect in service and took no steps to investigate or correct deficiencies). Further, there is no suggestion that Defendants have evaded service, and because this is the third lawsuit against many of the same Defendants, the Court is cognizant of the significant prejudice to Defendants in continuing to expend time and resources defending Plaintiffs' claims.  More importantly, given the nature of the claims asserted,

---

[19] Good cause may exist "when some outside factor, such as reliance on faulty advice, rather than inadvertence or negligence, prevented service."  Lepone-Dempsey v. Carroll County Comm'rs, et al., 476 F.3d 1277, 1281 (11th Cir. 2007).

AO 72A
(Rev.8/82)

much if not all of what Plaintiffs seek to litigate in the instant case is precluded as a matter of law.  Therefore, the Court, in its discretion, is not inclined to recommend to the District Judge that Plaintiffs be awarded additional time to accomplish service.

For all of these reasons, the Court hereby **RECOMMENDS** that Plaintiffs' claims against the IH5 Defendants, McCalla, and Hicks be dismissed for insufficiency of service of process and lack of personal jurisdiction, Fed. R. Civ. P. 12(b)(5).

### B.     Failure To Comply With Fed. R. Civ. P. 8 Pleading Requirements

Rule 8(a)(2) of the Federal Rules of Civil Procedure  requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (as amended 2007).  However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964–65 (2007) (citations omitted); accord Financial Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (recognizing that "while notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain

19

a recovery under some viable legal theory") (citations and internal quotation marks omitted).

"Factual allegations must be enough to raise a right to relief above the speculative level," i.e., they must do more than merely create a "'suspicion [of] a legally cognizable right of action,' on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1965 (citations omitted; emphasis omitted). "Stated differently, the factual allegations in a complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief[.]'" Stephens, 500 F.3d at 1282 (quoting Twombly, 127 S. Ct. at 1966–67). A plaintiff's complaint will be dismissed if it does not contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The court's inquiry at this stage of the proceedings focuses on whether the challenged pleadings "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (citations and internal quotation marks omitted). And a court reviewing a motion to dismiss must keep in mind that a "motion to dismiss for failure to state a claim upon

20

which relief can be granted merely tests the sufficiency of the complaint; it does not decide the merits of the case." Wein v. American Huts, Inc., 313 F. Supp. 2d 1356, 1359 (S.D. Fla. 2004) (citing Milburn v. United States, 734 F.2d 762, 765 (11th Cir. 1984)).  "Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law." Bernard v. Calejo, 17 F. Supp. 2d 1311, 1314 (S.D. Fla. 1998) (citing Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) ("[T]he court may dismiss a complaint . . . when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.")). See also Glover v. Liggett Group, Inc., 459 F.3d 1304, 1308 (11th Cir. 2006); Aque v. Home Depot U.S.A., Inc., 629 F. Supp. 2d 1336, 1350 (N.D. Ga. 2009).

The law establishes that "[a] document filed *pro se* is 'to be liberally construed' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]'" Erickson, 127 S. Ct. at 2200 (citations omitted).  Nevertheless, nothing in that leniency excuses a plaintiff from compliance with threshold requirements of the Federal Rules of Civil Procedure. "Even though a *pro se* complaint should be construed liberally, a *pro se* complaint still

21

must state a claim upon which the Court can grant relief." Grigsby v. Thomas, 506 F. Supp. 2d 26, 28 (D. D.C. 2007).

The court will apply these standards in ruling on the Rule 8 and 12(b)(6) motion of First American and Rule 12(b)(6) motion of Bank Defendants SLS, BONYM, MERS.

Plaintiffs' Third Complaint fails to comply with the federal rules in that it fails to identify specific actions of the individual or corporate defendants that allegedly give rise to the causes of action.  Plaintiffs' Third Complaint is replete with references to "ALL Defendants," "the conduct of Defendants," and actions taken by the "Foreclosing Defendants."[20]  [Third Complaint].  Plaintiffs' reference to the "Foreclosing Defendants" group in conjunction with Counts III, IV, and V still falls short of the pleading requirements because Defendants are left to speculate as to 1) who Plaintiffs consider to be the "Foreclosing Defendants" and 2) what conduct Plaintiffs assign to a given Defendant.   Pleadings that "fail to specify which defendant is responsible for each act alleged" are fatally deficient. Giscombe v. ABN Amro Mortg. Group, Inc., 680 F. Supp. 2d 1378, 1381 (N.D. Ga. 2010) (citations omitted).

---

[20] Count VII is the single exception since Plaintiffs reference  McCalla Raymer, LLC, and Invitation Homes in connection with alleging Criminal Conspiracy of Theft. [Third Complaint at 16–17].

AO 72A
(Rev.8/82)

As argued by Defendants, Plaintiffs' Third Complaint does not provide Defendants with fair notice of the grounds for the claims alleged.  See Beckwith v. Bellsouth Telecomms. Inc., 146 Fed. Appx. 368, 372 (11th Cir. 2005) ("It is virtually impossible to ascertain what factual allegations correspond with each claim and which claim is directed at which defendant."); accord Giscombe, 680 F. Supp. 2d at 1381 (citing Beckwith, 146 Fed. Appx. at 373).  Moreover, as a practical matter, these deficiencies in Plaintiffs' Third Complaint make it difficult if not impossible for Defendants to respond. Beckwith, 146 Fed. Appx. at 371–73 (describing characteristics of a shotgun complaint) (citations omitted); also see Giscombe, 680 F.Supp.2d at 1381 (applying Beckwith).

For these reasons, the undersigned respectfully **RECOMMENDS** that Plaintiffs' Third Complaint be dismissed pursuant to Fed. R. Civ. P. 8.

### C.    Plaintiffs Fail To State A Claim Upon Which Relief May Be Granted, Fed. R. Civ. P. 12(b)(6), Against Defendant First American Title Insurance Company

Consistent with the Rule 8 analysis, First American seeks Rule 12(b)(6) dismissal based upon Plaintiffs' failure to allege specific factual allegations concerning First American. [Doc. 10].  First American characterizes Plaintiffs' Third Complaint as containing "scatter-shot" allegations generally against "all Defendants," minus

23

allegations about the acts or omissions of individual defendants. [Doc. 10 at 2 (citing Third Complaint, ¶¶ 54–67)].   The only allegation that speaks directly to First American is Plaintiffs' discussion of First American "handl[ing] all the paperwork" and "possibly serv[ing] as escrow agent at closing." [Id.].  Paragraph 17 reads:

> Defendant known as FIRST AMERICAN TITLE COMPANY, with address located at 1 First American Way, Santa Ana, CA 92707 handled all paperwork and communication between the parties and possibly served as escrow agent at closing, thus conspiring and bringing injury to Plaintiffs by being made subject to a form of involuntary indebtedness and economic slavery by deception through nondisclosure at closing.

[Third Complaint at 5, ¶ 17].  Plaintiffs do not mention First American within any of the Third Complaint's designated Counts or articulate any facts that might entitle Plantiffs to recover against First American.[21]

---

[21] The Court further finds that Defendant First American's analysis concerning the other fatal deficiencies in Plaintiffs' allegations on each cause of action, namely, Plaintiffs' inability to allege facts in support of essential components of each claim (to the extent such a claim is even cognizable), is well taken and supports the alternative recommendation that Plaintiffs' Third Complaint as a whole fails to state a claim upon which relief may be granted.  [Doc. 10 at 7–16].  For instance, First American aptly argues that there can be no violation of Plaintiffs' civil rights pursuant to 42 U.S.C. § 1983, which requires state action, based upon the conduct of these Defendants as alleged by Plaintiffs. [Id. at 13–15].  See Nembhard v. J.P. Morgan Chase Bank, N.A., 2014 WL 1764708, at **2–3 (N.D. Ga.  April 29, 2014) (a non-judicial foreclosure does not give rise to a civil rights violation because there is no state action) (citations omitted) (listing cases).  Similarly, with respect to Plaintiffs' negligence claim, First American correctly states that none of the Defendants named in this Third Complaint owed Plaintiffs any duty, much less a fiduciary duty, to assist Plaintiffs or provide a

24

Thus, the undersigned respectfully **RECOMMENDS** that Plaintiffs' claims against First American be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### D.    Res Judicata Principles Bar Plaintiffs' Claims

As a procedural matter, the merits of the Rule 12(b)(6) *res judicata* argument are only squarely before the Court with respect to certain of the Bank Defendants – SLS, BONYM, and MERS – since McCalla and Hicks were not served.[22] [Doc. 7 at 6].  As explained herein, even if service had been accomplished, and even if Plaintiffs attempted to recast their factual allegations in an amended complaint, any claim arising out of the same nucleus of operative facts is barred by *res judicata* principles.

"Under *res judicata*, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action."  Montana v. United States, 99 S. Ct. 970, 973 (1979) (citations omitted).

"The purpose behind the doctrine of *res judicata* is that the 'full and fair opportunity to litigate protects [a party's] adversaries from the expense and vexation

---

loan modification such that Plaintiffs could avoid foreclosure.  [Id. at 12–13].

[22] To the extent the undersigned discusses privity between the IH5 Defendants and the Trustee BONYM and privity between BANA and the Bank Defendants, the Court's analysis is offered strictly for purposes of explaining why allowing Plaintiffs additional time to effect service upon IH5 and why amendment of Plaintiffs' Third Complaint would be futile.

25

attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.'" <u>Ragsdale v. Rubbermaid, Inc.</u>, 193 F.3d 1235, 1238 (11th Cir. 1999) (quoting <u>Montana</u>, 99 S. Ct. at 974–75). "*Res judicata* bars the filing of claims which were raised or could have been raised in an earlier proceeding." <u>Ragsdale</u>, 193 F. 3d at 1238 (citations omitted); <u>see also</u> <u>De Souza v. J.P. Morgan Chase Home Lending Div.</u>, 608 Fed. Appx. 776, 780–81 (11th Cir. 2015). "[F]or *res judicata* purposes, claims that 'could have been brought' are claims in existence at the time the original complaint [was] filed[.]" <u>Pleming v. Universal-Rundle Corp.</u>, 142 F.3d 1354, 1357 (11th Cir. 1998) (quoting <u>Manning v. City of Auburn</u>, 953 F.2d 1355, 1360 (11th Cir. 1992)).

This Court has previously explained:

> "*Res judicata* comes in two forms: claim preclusion (traditional '*res judicata*') and issue preclusion (also known as 'collateral estoppel')." <u>Cmty. State Bank v. Strong</u>, 651 F.3d 1241, 1263 (11th Cir. 2011). Issue preclusion or collateral estoppel forecloses the relitigation of issues that have been previously litigated and decided. <u>CSX Trans., Inc. v. Bhd. of Maint. of Way Emps.</u>, 327 F.3d 1309, 1316 (11th Cir. 2003). When the prior decision was made by a federal court, federal preclusion principles apply. <u>Id.</u> And when the prior decision was made by the same court, the court may apply preclusion principles *sua sponte*. <u>See</u> <u>Shurick v. Boeing Co.</u>, 623 F.3d 1114, 1116 n.2 (11th Cir. 2010).

<u>Insituform Techs., LLC v. Cosmic TopHat, LLC</u>, 959 F. Supp. 2d 1335, 1341 (N.D. Ga. 2013) (italics added).

26

The Court finds that federal law governs the Court's *res judicata* analysis given that the prior judgment in <u>Cordner II</u> was issued by this federal court.  <u>See</u> <u>Citibank, N.A. v. Data Lease Fin. Corp.</u>, 904 F.2d 1498, 1501 (11ᵗʰ Cir. 1990) ("[E]ven in a case which rests its subject matter jurisdiction solely upon diversity of citizenship, a federal court must apply federal law to determine the preclusive effect of a prior federal court decision.") (citations omitted); <u>see also</u> <u>Jones v. New England Life Ins. Co.</u>, 974 F. Supp. 1476, 1479–80 (M.D. Ga. 1996) (discussing inconsistent lines of Eleventh Circuit precedent on choice of law question; applying federal common law to determine preclusive effect of prior federal court judgment).[23] "Under Eleventh Circuit precedent, a claim will be barred by prior litigation if all four of the following elements are present: (1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." <u>Ragsdale</u>, 193 F. 3d at 1238 (citations omitted); <u>see also</u> <u>Citibank</u>, 904 F.2d at 1501.

---

[23] To the extent circuit precedent is unclear, application of either Georgia's *res judicata* doctrine or the federal common law of *res judicata* results in the same decision on the merits.  <u>See</u> <u>Pleming</u>, 142 F.3d at 1356  n.1 (noting unclear circuit precedent and that "both federal and Georgia principles of *res judicata* require the cause of action in the first and second lawsuit to be the same") (citations omitted).

AO 72A
(Rev.8/82)

Cordner III mirrors Plaintiffs' previous two actions but adds new parties and purports to include new claims.[24]  Plaintiffs' claims are precluded by the doctrine of *res judicata* because the newly named Defendants are all in privity with previously named Defendants and since Plaintiffs' "new" claims, no matter how characterized or labeled, all relate to the foreclosure of the Property.

### 1.   A Court of Competent Jurisdiction Has Entered Final Judgment On The Merits

The District Court's September 15, 2015, Memorandum and Order in Cordner II [Doc. 13] dismissing Plaintiff's Second Complaint *with prejudice* constitutes a final judgment on the merits.[25]  See Citibank, 904 F.2d at 1501 ("The phrases 'with prejudice' and 'on the merits' are synonymous terms, both of which invoke the doctrine of claim preclusion.").  In addition, the United States District Court, Northern District of Georgia, is a court of competent jurisdiction.  See Bailey v. Deutsche Bank Trust Co. Americas, 2013 WL 820411, at *2 (M.D. Ga. March 5, 2013) (recognizing

---

[24] Plaintiffs name as defendants parties not named in Cordner I and II: the IH5 Defendants, BANA, Hicks, and First American.  [Doc. 10 at 4 n.2].

[25] Defendants asserted the same legal argument concerning the effect of dismissal of Cordner I in achieving dismissal of Cordner II.  Plaintiffs are undeterred.

the Northern District of Georgia as a court of competent jurisdiction).  The first two criteria are satisfied.

### 2.    The Same Cause of Action Is Involved

"The principal test for determining whether the causes of action are the same is whether the primary right and duty are the same in each case.  In determining whether the causes of action are the same, a court must compare the substance of the actions, not their form."  Citibank, 904 F.2d at 1503 (citation and internal quotation marks omitted); see also Ragsdale, 193 F.3d at 1239 (discussing Citibank).  "It is now said, in general, that if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, that the two cases are really the same claim or cause of action for purposes of *res judicata*."  Citibank, 904 F.2d at 1503 (citation and internal quotation marks omitted); accord Shurick v. The Boeing Company, 623 F.3d 1114, 1117 (11th Cir. 2010) (rejecting plaintiff's attempts to distinguish Ragsdale; applying *res judicata* to bar subsequent claims despite different legal bases where the differences between the two claims as framed by plaintiff were "purely cosmetic" and common  nucleus of operative fact was evident by the "'series of transactions closely related in time, space, and origin'") (quoting Ragsdale, 193 F.3d at 1240); see also De Souza, 608 Fed. Appx. at 780 (*res judicata* barred claims not

29

previously raised where claims arose out of attempts to collect mortgage debt and foreclose on plaintiff's property and where same factual predicate was asserted in both actions).  Thus, Ragsdale teaches that the Court "'must [therefore] look to the factual issues to be resolved [in the instant case], and compare them with the issues explored in'" Plaintiffs' earlier case(s).  Ragsdale, 193 F.3d at 1239 (quoting Citibank, 904 F.2d at 1503).  The Court next turns to a comparison of the "facts" alleged by Plaintiffs in the Third Complaint and those alleged in the Second Complaint.

In each of Plaintiffs' lawsuits, the gravamen of the Cordners' complaint is wrongful foreclosure.  Indeed, Chief Judge Thrash recognized in Cordner II that Plaintiffs' legal theory was essentially wrongful foreclosure when finding that the Second Complaint was nearly identical to the First Complaint that had been dismissed with prejudice.  [Cordner II, Doc. 13 at 1].  Plaintiffs' Third Complaint is no exception.  Within the "Introduction & Opening Statement" of the Third Complaint Plaintiffs assert that the "civil rights" suit is based on "wrongful foreclosure, fraud, grand theft, criminal trespass, . . . RICO," and "criminal conspiracy."  [Third Complaint at 1].  The "facts" alleged in each complaint are the facts underlying Plaintiffs' purchase and financing of the Property, the Assignment, attempts to foreclose upon the Property following default, and complaints about the process.  By way of example, Plaintiffs'

30

Criminal Conspiracy of Theft claim attacks the mechanics of the foreclosure process in asserting that Plaintiffs received a letter by U.S. Mail from McCalla – not the Court – and that the Court's failure to serve the same document upon Plaintiffs amounts to a violation of their civil rights. [Third Complaint at 16, ¶ 60]. While Plaintiffs' previous actions were aimed at preventing foreclosure, the thrust of Plaintiffs' third lawsuit is that foreclosure should not have occurred. Nonetheless, the primary rights and duties that are at the core of Plaintiffs' filings (i.e., questioning the role of mortgage loan servicer, a secured creditor's obligation to disclose information concerning assignment to the mortgagee / home owner, and right to have foreclosure enforced by proper party) are asserted in all three of Plaintiffs' Complaints. This is borne out by the fact that the same Property, Note, Security Deed, and Assignment are at issue in all of Plaintiffs' cases. See, e.g., Milburn v. Aegis Wholesale Corp., 2013 WL 1747915, at *4 (N.D. Ga. April 22, 2013); see also O'Connor v. Wells Fargo Bank, Nat. Ass'n, 2012 WL 7808867, at *5 (N.D. Ga. October 29, 2012) (*res judicata* barred subsequent claims of fraud and wrongful foreclosure that questioned the validity of the trustee's interest in the promissory note and security deed and standing to foreclose). In sum, the only substantive difference between the Second and Third Complaints is that Plaintiffs' Third Complaint challenges the June 2, 2015, foreclosure

31

sale, purchase of the Property by IH5, and subsequent transfer to the new owner, which Plaintiffs have no standing to challenge.  For these reasons, the Court finds that the instant claims arise out of a common nucleus of operative fact – foreclosure of the Property.

### 3.    The Parties, Or Those In Privity With Them, Are The Same

Plaintiffs' Third Complaint names new parties.  More specifically, Plaintiffs' Second Complaint named SLS, McCalla, AWL, BONYM, and MERS as Defendants. Plaintiffs' Third Complaint names all of these parties again and adds the IH5 Defendants, First American, BANA, and Donald R. Hicks.[26]  Plaintiffs' decision to name additional Defendants in their Third Complaint is of no moment in light of the privity that exists amongst Defendants.

Privity exists between the previously named defendants and the IH5 Defendants, First American, and BANA such that the requisite identity of the parties element is satisfied.  "A privy is one who is represented at trial and who is in law so connected with a party to the judgment as to have such an identity of interest that the party to the

_____

[26] Plaintiffs' Third Complaint asserts that McCalla Raymer, LLC, is the law firm handling the foreclosure case and that Donald R. Hicks ("Hicks") "represents" McCalla. [Third Complaint at 5, ¶¶ 14 and 16].  The Bank Defendants represent that Hicks is in privity with McCalla. [Doc. 7-1 at 10 n.7].

32

judgment represented the same legal right." Moreland v. Bank of New York Mellon, et al., 2015 WL 4274419, at **3–5 (S.D. Ga. July 14, 2015) (applying Georgia law in *res judicata* analysis to determine whether state court judgment should be given effect in subsequent federal action and holding that privity is found between loan servicer and trustee in foreclosure context) (citation and internal quotation marks omitted); see also Bailey v. Deutsche Bank Trust Co. Americas, 2013 WL 820411, at **2–3 (M.D. Ga. March 5, 2013) (privity found to exist for purposes of res judicata between the defendant-trustee and loan servicer named in the prior action; reasoning that the trustee and servicer had a shared interest in collecting the debt owed by plaintiff and enforcing the same property right, which was secured by the property).[27] "'Privity' is a flexible legal term, comprising several different types of relationships and generally applying when a person, although not a party, has his interests adequately represented by

---

[27] In Moreland, the court considered whether privity existed between the named party-defendants. See Moreland, 2015 WL 4274419, at *4. Like the instant case, the plaintiff in Moreland contested foreclosure on numerous grounds. Id. The first case brought by Moreland only named SPS as a defendant while the second suit named SPS plus the Trustee, J.P. Morgan Chase Bank, and an individual. Id. Relying on Bailey and the notion of concurrent interest relative to the property, the district judge explained that, "SPS, the loan servicer, and Trustee, the loan holder, are plainly in privity with one another." Id. (citing Bailey, 2013 WL 820411, at *3). In other words, Moreland's inclusion of additional parties in his second action did not defeat application of *res judicata*.

someone with the same interests who is a party." <u>E.E.O.C. v. Pemco Aeroplex, Inc.,</u> 383 F.3d 1280, 1286 (11th Cir. 2004) (citation omitted).

A classic example of privity is the successor in interest. <u>See</u> <u>Bailey</u>, 2013 WL 820411, at *2. In <u>Bailey</u>, the court explained:

> "Privity describes a relationship between one who is a party of record and a nonparty that is sufficiently close so a judgment for or against the party should bind or protect the nonparty. This relationship between the party and nonparty may be one of several types: **where the nonparty has succeeded to the party's interest in the property**, where the nonparty controlled the original suit, where the nonparty's interests were represented adequately by the party in the original suit, and **where the party and nonparty have concurrent interests in the same property right**."

<u>Id.</u> (citations omitted; emphases supplied). IH5 is the successor in interest to BONYM. As such, IH5 is in privity with BONYM and all claims Plaintiffs assert against IH5 and the other IH5 Defendants, who have a shared interest in the Property (and in the litigation), are barred.

BANA is in privity with the Bank Defendants in that BANA would have shared the same interest in the Property as the other Bank Defendants such as AWL and BONY. <u>See</u> <u>Bailey</u>, 2013 WL 820411, at **2–3 (privity found to exist for purposes of *res judicata* between the defendant-trustee and loan servicer named in the prior action; reasoning that the trustee and servicer had a shared interest in collecting the

34

debt owed by plaintiff and enforcing the same property right, which was secured by the property).

Moreover, because Plaintiffs do not state a claim upon which relief may be granted as to First American, Plaintiffs' Third Complaint including First American as a party-defendant will not defeat application of *res judicata*. See Moreland, 2015 WL 4274419, at **3–5 (dismissal affirmed on *res judicata* grounds where subsequent complaint only included one factual allegation to defendant not previously named in state court action).

Accordingly, for the reasons set forth herein, the Court respectfully **RECOMMENDS** that the District Court find, as a matter of law, that Plaintiffs' Third Complaint is barred in its entirety by the doctrine of *res judicata*.

The Court further **RECOMMENDS** that the District Judge find, as a matter of law, that Plaintiffs are not entitled to amend the Third Complaint because amendment in this instance would be futile. See De Souza, 608 Fed. Appx. at 781 (no abuse of discretion denying leave to amend before dismissing complaint with prejudice where amendment would have been futile) (citation omitted). "Any claims based on the same 'nucleus of operative facts,' however carefully pled, would also be barred by *res judicata*." Id.

35

## V.    CONCLUSION

The Court **RESPECTFULLY RECOMMENDS** that the Defendants' Motions [Docs. 7, 10, 26] to Dismiss be **GRANTED** and that Plaintiffs not be allowed to amend the complaint.  More specifically, the undersigned **RECOMMENDS**:

1)    That Plaintiffs' Third Complaint be **DISMISSED** pursuant to Fed. R. Civ. P. 12(b)(6) and the doctrine of *res judicata*;

2)    That Plaintiffs' claims against the IH5 Defendants, Defendant McCalla, and Defendant Hicks be **DISMISSED** pursuant to Fed. R. Civ. P. 12(b)(5); and

3) That Plaintiffs' claims against Defendant First American be **DISMISSED** pursuant to  Fed. R. Civ. P. 8 and 12(b)(6).

All pretrial matters have been concluded with the issuance of this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1), this Court's Local Rule 72.1, and Standing Order 14-01 (N.D. Ga. August 15, 2014).  The Clerk, therefore, is **DIRECTED** to terminate the reference to the Magistrate Judge.

**SO ORDERED THIS** 7th day of June, 2016.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

36